Trish A. Walsh, OSB #101604
twalsh@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Attorneys for Defendants Unitus Community Credit Union and Rebecca Rich

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BENJAMIN JAY BARBER,<br><br>                    Plaintiff,<br><br>     v.<br><br>UNITUS COMMUNITY CREDIT UNION,<br>REBECCA RICH, and JOHN DOE,<br><br>                  Defendants. | Case No.  3:22-cv-00134-MO<br><br>DEFENDANTS' MOTION TO DISMISS<br>PURSUANT TO FED. R. CIV. P. 12(b)(6) |

## L.R. 7-1 CERTIFICATION

Pursuant to L.R. 7-1, the undersigned attorney for defendants Unitus Community Credit Union ("Unitus" or "Credit Union") and Rebecca Rich ("Rich") (collectively, "Defendants") hereby certifies that she has conferred with *pro se* plaintiff Benjamin Jay Barber ("Plaintiff" or "Barber") regarding this motion and the parties were unable to resolve this motion without the court's assistance.

## MOTION

Defendants move to dismiss Plaintiff's claims in their entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Alternatively,

Defendants request that the Court dismiss Plaintiff's federal claims for failure to state a claim upon which relief may be granted, and decline to exercise supplemental jurisdiction over the remaining state law claims.

## MEMORANDUM

### I.    Summary of Argument.

Barber, *pro se*, filed an Amended Complaint on behalf of himself (and purports to seek to represent a class action) against the Credit Union and one of its branch managers (and an unnamed teller) based on allegations that he was not allowed to open a new checking account at the Credit Union in order to deposit a class action settlement distribution check because he did not present sufficient identification and proof of residence.

However, Plaintiffs' Amended Complaint fails to allege sufficient factual allegations to state a claim upon which relief may be granted against Defendants.  Accordingly, Plaintiffs' Amended Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(6).

Alternatively, because Plaintiff's sole claims giving rise to federal question jurisdiction fail to state a claim, the Court may dismiss those claims and decline to exercise supplemental jurisdiction over the remaining state law claims.

### II.    Background Facts.

The Amended Complaint alleges that, on December 21, 2021, Plaintiff visited the Westmoreland branch of the Credit Union to open a checking account, with the purpose of depositing a class action settlement check. Am. Compl. p. 1 (Dkt. No. 11 at 1).  Plaintiff alleges that the teller told him that he needed two pieces of identification—that he could use government-issued identification, and for the secondary identification, he could use a bank card from a financial institution. *Id*. Plaintiff alleges that he was told that he was also required to show proof of address, in the form of a lease or utility payment. *Id*.

Page 2 -    DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiff alleges that he provided the teller with (1) his Oregon ID card, (2) his social security card, (3) his Washington County Jail picture identification card, (4) his Coinbase Visa card, and (5) his Paypal cash card. *Id.* Plaintiff alleges that the teller told him that his identification was too new for proof of residence, and that the Coinbase and Paypal cash cards were not sufficient identification. *Id.* Plaintiff also asserts that he offered to locate his Century Link internet bill for proof of address. *Id.*

Plaintiff also alleges that he informed the teller that he used to be a customer of the Credit Union, and that the check he wanted to deposit had his address on it. *Id.* Plaintiff asserts that he then demanded to see a copy of the rules and regulations that the Credit Union uses to verify identity, and that the teller stated that he did not have a way for Plaintiff to see the Credit Union's rules regarding opening accounts, and that the teller then summoned the manager, Rich. *Id.*

Plaintiff alleges that Rich told him that the documents he had presented were not sufficient proof of identity and residence to open a checking account. *Id.* p. 2 (Dkt. No. 11 at 2). Plaintiff also alleges that Rich told him the Credit Union would not be able to use his previous account to verify his identity, because the account had been closed for too long. *Id.*

Plaintiff alleges that he returned home and applied for a checking account through the Credit Union's website. *Id.* He also alleges that, on the Credit Union's website regarding "business-checking," the website stated:

> [f]or each account owner and signer:
>
> 1. Primary form of ID, usually a valid driver's license with a current address. If address is not current, bring a document such as a utility bill showing your current address.
>
> 2. Secondary form of ID, usually a debit or credit card from another financial institution.

*Id.*

Page 3 -    DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Based on those allegations, Plaintiff asserts eleven claims. *See id.*, p. 2–5. However, only two of those claims purport to present a federal question, and neither of those claims state a claim for relief upon which relief may be granted to Plaintiff. Therefore, those federal claims should be dismissed as a matter of law. The Court may decline to exercise supplemental jurisdiction over the remaining state law claims.

Even if the Court decides to exercise supplemental jurisdiction over the state law claims, the state law claims should be dismissed as a matter of law as well, as discussed more fully below.

## III.    Legal Argument.

The Credit Union requests that the Court dismiss the Amended Complaint because it fails to state a claim upon which relief may be granted, and should be dismissed pursuant to Rule 12(b)(6). Defendants will address each claim, in turn, below.

### A.    Standard for a Motion to Dismiss.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." *Id.* Dismissal is proper where the complaint either "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Id.*

### B.    A Pro Se Plaintiff Cannot Represent a Class Action.

As a preliminary matter, Plaintiff's Amended Complaint is defective in that it seeks "class action status." (See Dkt. No. 11 at p. 1.) A pro se plaintiff cannot represent a class action. *See, e.g., Endsley v. California ex rel. Brown*, 627 F. App'x 644, 645 (9th Cir. 2015) ("the

Page 4 -    DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

complaint was procedurally defective because Endsley, a non-lawyer, cannot represent other members of the proposed class in this class action suit.") (*citing Simon v. Hartford Life, Inc.,* 546 F.3d 661, 664 (9th Cir.2008) (discussing the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity)); *Welch v. Terhune*, 11 F. App'x 747, 747 (9th Cir. 2001) ("The district court properly determined that Welch, proceeding pro se, could not prosecute the instant action as a class action.") (*citing C.E. Pope Equity Trust v. United States,* 818 F.2d 696, 697 (9th Cir.1987) (holding that a pro se litigant may not appear as an attorney for others)).

"Although a non-attorney may appear *in propria persona* in his own behalf, that privilege is personal to him." *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). "He has no authority to appear as an attorney for others than himself." *Id.*; *Johns v. Cty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, [h]e has no authority to appear as an attorney for others than himself.") (internal quotation omitted).

Moreover, Plaintiff's Amended Complaint contains no allegations whatsoever on behalf of a class. Accordingly, Plaintiff's request for "class action status" in his Amended Complaint should be dismissed.

### C.    Plaintiff's Claims 1 and 11 Should Be Dismissed.

In his first claim, Plaintiff alleges that that Defendants violated federal regulations regarding fair access to financial services. Am. Compl., p. 2 (Dkt. No. 11 at 2). He cites the source of this claim as 12 C.F.R. Part 55 ("Fair Access to Financial Services") and 31 C.F.R. § 1020.220(A)(5) ("Customer identification program requirements for banks."). He also cites 12 U.S.C. § 1(a) (which establishes the Office of the Comptroller of the Currency).

However, none of these authorities provide a valid basis for Plaintiff's claim as a matter of law. First, 12 C.F.R. Part 55, the Fair Access to Financial Services Final Rule, applies only to national banks. *See* 12 C.F.R. § 55.1(a)(1) ("*Bank* means an entity for which the Office of

the Comptroller of the Currency is the appropriate Federal banking agency as defined in 12 U.S.C. 1813(q)(1)."). The Office of the Comptroller of the Currency ("OCC") is a bureau of the U.S. Department of the Treasury that regulates all national banks and federal savings associations as well as federal branches and agencies of foreign banks. See https://www.occ.treas.gov/about/index-about.html. Under 12 U.S.C. §1813(q)(1), the term "appropriate Federal banking agency" means:

> (1) the Office of the Comptroller of the Currency, in the case of--
> (A) any national banking association;
> (B) any Federal branch or agency of a foreign bank; and
> (C) any Federal savings association[.]

Notably, the foregoing definition does not include Unitus because Unitus is an Oregon-chartered Credit Union, not a national bank, Federal branch or agency of a foreign bank, or Federal savings association. *See* Unitus' Corporate Disclosure Statement. (Dkt. No. 24.) Therefore, Unitus is not a "covered bank" under 12 CFR Part 55 (nor is Ms. Rich, an individual). Therefore, neither 12 C.F.R. Part 55 ("Fair Access to Financial Services") nor 12 U.S.C. § 1(a) provides a valid basis for Plaintiff's alleged claim against Defendants.

Additionally, 31 C.F.R. § 1020.220(A)(5), regarding customer identification program requirements for banks, also does not provide a valid basis for Plaintiff's alleged claim. The Bank Secrecy Act, as amended by the USA Patriot Act, 31 U.S.C. §§ 5311 *et seq.*, is the source of this claim. In an effort to combat money laundering and the financing of terrorism, the Bank Secrecy Act requires certain financial institutions to establish anti-money laundering programs. *See* 31 U.S.C. §5318(h); *see also, e.g., Kraft v. Off. of the Comptroller of Currency*, No. 4:20-CV-04111-RAL, 2021 WL 1251393, at *3–4 (D.S.D. Apr. 5, 2021). Section 5318(h)(2) authorizes the Secretary of Treasury to adopt regulations prescribing the minimum requirements of such programs. The regulations require that, as part of the financial institution's anti-money laundering program, the financial institution must have a Customer Identification Program. 31

Page 6 -    DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

C.F.R. § 1020.220. This means that, at a minimum, a covered financial institution must have written policies and procedures in place to verify the identities of its customers.

However, Plaintiff's claim under this regulation must be dismissed because there is no private cause of action under the Bank Secrecy Act, the USA Patriot Act, or any regulation passed in accordance therewith. *See Kraft v. Off. of the Comptroller of Currency*, No. 4:20-CV-04111-RAL, 2021 WL 1251393, at *3–4 (D.S.D. Apr. 5, 2021) ("Indeed, courts have repeatedly held that there is no private right of action under the Bank Secrecy Act or the USA PATRIOT Act.") (collecting cases); *James v. Heritage Valley Fed. Credit Union*, 197 Fed. App'x 102, 106 (3d Cir. 2006) (noting that the Bank Secrecy Act does not authorize a cause of action against the financial institution or its employees); *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) ("[T]he Bank Secrecy Act does not create a private right of action."); *Reg'l Produce Coop. Corp. v. TD Bank, N.A.*, No. CV 19-1883, 2020 WL 1444888, at *11 (E.D. Pa. Mar. 24, 2020) ("It is undisputed that there is no private right of action under the Bank Secrecy Act."); *Venture Gen, Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778-TSH, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) (collecting cases in which courts have held that there is no private cause of action under the Bank Secrecy Act or USA PATRIOT Act); *Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1039 (M.D. Tenn. 2017) (same); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[T]he Bank Secrecy Act does not create a private right of action."); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874–75 (N.D. Iowa 2009) ("[T]he Bank Secrecy Act does not permit a private right of action."); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn. 2008) (dismissing plaintiff's claim in part because neither the USA PATRIOT Act or the Bank Secrecy Act appear "to authorize a private right of action"). Under 31 U.S.C. §§ 5321 and 5322, the United States is the only party authorized to seek civil or criminal penalties for any violation of the Bank Secrecy Act or accompanying regulation.

Because there is no private right of action under the Bank Secrecy Act, the USA PATRIOT Act, or any regulation passed in accordance therewith, Plaintiff cannot assert a claim that Unitus violated 31 C.F.R. § 1020.220. Therefore, his first claim should be dismissed as a matter of law. (Plaintiff seemingly acknowledges that there is no private right of action for his first claim, as stated on p. 3 of his Amended Complaint (Dkt. No. 11 at 3).)

Furthermore, Plaintiff's Eleventh claim, for intentional or negligent interference with business relations, a common law tort, must be dismissed as a matter of law as well because the courts have found that the Bank Secrecy Act does not give rise to a common law duty on the part of financial institutions. *See Kraft v. Off. of the Comptroller of Currency*, No. 4:20-CV-04111-RAL, 2021 WL 1251393, at *3–4 (D.S.D. Apr. 5, 2021) (collecting cases); *Venture Gen. Agency, LLC*, 2019 WL 3503109, at *7 (collecting cases in which courts have found that the Bank Secrecy Act does not give rise to a common law duty on the part of the banks); *Ferring v. Bank of Am. NA*, No. CV-15-01168-PHX-GMS, 2016 WL 407315, at *4 (D. Ariz. Feb. 3, 2016) (finding that the plaintiff could not rely on the Bank Secrecy Act and OCC regulations to establish a duty in a negligence action); *Rosemann v. Sigillito*, 956 F. Supp. 2d 1082, 1111 (E.D. Mo. 2013) (listing cases in which courts have found that banks have no duty of care arising from its internal policies or the Bank Secrecy Act); *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013) (reasoning that plaintiff could not proceed under a negligence theory predicated on compliance with the CIP or the Bank Secrecy Act because the Bank Secrecy Act does not create a private cause of action), *aff'd*, 774 F.3d 351 (6th Cir. 2014); *Armstrong*, 678 F. Supp. 2d at 874–75 (collecting cases in which courts have rejected the argument that a duty of care arises from the Bank Secrecy Act).

In short, Plaintiff cannot pursue a cause of action for a violation of the Bank Secrecy Act or the USA PATRIOT Act or regulations passed in accordance therewith, nor for common law torts allegedly arising therefrom. Therefore, Plaintiff's claims 1 and 11 must be dismissed.

**D.      Plaintiff's Claim 2 Under the Equal Credit Opportunity Act Must Be Dismissed.**

Plaintiff's second claim is for alleged violation of the Equal Credit Opportunity Act. *See* Am. Compl. p, 3 (Dkt. No. 11 at 3). Plaintiff has cited a string of federal and state statutory and regulatory provisions in support of this claim: 15 U.S.C. § 1691e(b) (regarding recovery of punitive damages in civil claims under the ECOA), 12 C.F.R. § 1002.16 (regarding enforcement of the ECOA), as well as, confusingly, 42 U.S.C. § 2000a and ORS 659A.403 (regarding prohibition against discrimination in places of public accommodation).  To the extent that Plaintiff is attempting to state claims other than violation of the ECOA under "Claim 2", Defendants request that the Court strike those claims as claims not separately stated as required under Fed. R. Civ. P. 10.

With respect to the Equal Credit Opportunity Act ("ECOA"), Plaintiff's claim fails as a matter of law. To state a claim for violation of the ECOA, a plaintiff must allege he "(1) is a member of a protected class; (2) applied for credit; (3) was qualified for credit; and (4) was denied credit, despite being qualified." *Colquitt v. Manufacturers & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1232 (D. Or. 2015) (quoting *Blair v. Bank of Am., N.A.,* No. 10–CV–946–SI, 2012 WL 860411, at *12 (D. Or. Mar. 13, 2012) (citation omitted)).

Here, Plaintiff has not alleged that he applied for credit, much less that he was qualified for credit or that he was denied credit, despite being qualified. Instead, Plaintiff has alleged only that he attempted to open a checking account. See Amended Complaint, p. 1, 3 (Dkt. No. 11 at 1, 3).

The ECOA prohibits creditors from discriminating against any "applicant," with respect to any aspect of a "credit" transaction on the basis of protected classes. *See* 15 U.S.C. § 1691(a). However, the term "applicant" is defined by the statute to mean "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously

Page 9 -    DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

established credit limit." *See* 15 U.S.C. § 1691a(b). Additionally, the term "credit" means "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." *Id.* at § 1691a(d).

Plaintiff is not an "applicant" under the ECOA because he did not apply, and does not allege that he applied for, "credit." A checking account is not an extension of credit and does not create a right to defer payment.

Plaintiff has conflated the process for opening a checking account with the process of applying for credit. "No court has read a requirement into the ECOA that [] credit unions must apply the rules governing an application for a credit card, personal loan, vehicle loan, mortgage or other extension of credit when considering an application for a savings account, a checking account or membership in the organization." *Chizh v. Polish & Slavic Fed. Credit Union*, No. 10-CV-1505 SLT LB, 2011 WL 2680495, at *4 (E.D.N.Y. July 8, 2011).

To "present a question of material fact to a jury under the ECOA, a plaintiff must be an 'applicant' for 'credit,' because… 'absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable.'" *Id.* (*citing Shaumyan v. Sidetex Co., Inc.,* 900 F.2d 16, 18 (2d Cir. 1990)). The Amended Complaint does not allege that Plaintiff was an "applicant" for "credit," and, therefore the ECOA is inapplicable. Accordingly, Plaintiff's ECOA claim fails to state a plausible claim for relief and should be dismissed.

E.    **To The Extent Plaintiff's Claim 2 Is Based on an Alleged Violation of Federal Public Accommodation Law, Plaintiff's Claim Should Be Dismissed for Failure to Exhaust Administrative Remedies.**

Confusingly, Plaintiff's "Claim 2" under the Equal Credit Opportunity Act also references 42 U.S.C. § 2000a and ORS 659A.403, Federal and Oregon State public accommodation laws. To the extent that Plaintiff's Amended Complaint can be construed to include a claim for relief under the Federal public accommodations law, it should be dismissed

Page 10 -   DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

because Plaintiff has not alleged that he complied with the pre-filing notice requirements of the Federal statute.

Section § 2000a "empowers the Court to enjoin future discrimination or segregation in places of public accommodation." *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 878 (N.D. Iowa 2004) (*citing Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150–51, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970)). "To succeed, plaintiffs must present sufficient evidence to constitute a prima facie case of racial discrimination." *Id.* (*citing Dean v. Ashling,* 409 F.2d 754, 756 (5th Cir.1969)). However, "before filing suit under 42 U.S.C. § 2000a, a plaintiff must give written notice of the alleged act of discrimination to the appropriate state or local agency." *Jones v. Reg'l Transp. Dist.*, No. 10-CV-01535-BNB, 2010 WL 3341205, at *1 (D. Colo. Aug. 23, 2010) (*citing* 42 U.S.C. § 2000a–3(c) (requiring thirty days' notice to appropriate agency when state law prohibits discriminatory practices in places of public accommodation)).

Specifically, the Federal public accommodations law provides, in pertinent part, that:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. § 2000a-3(c). Oregon law prohibits discrimination in public accommodations. *See, e.g.*, ORS 659A.403.

Plaintiff does not allege that he complied with the pre-filing notice required before he initiated this action in Federal court. Therefore, any claim by Plaintiff under 42 U.S.C. § 2000a fails as a matter of law and should be dismissed. *See, e.g., White v. Denny's Inc.,*

918 F.Supp. 1418, 1423 (D.Colo.1996) (dismissing on summary judgment a claim for discrimination in violation of 42 U.S.C. § 2000a where plaintiff conceded they did not give written notice of the alleged act of discrimination to the appropriate state or local agency under Section 2000a-3(c)); *Watson v. Fraternal Ord. of Eagles*, 915 F.2d 235, 242 (6th Cir. 1990) (holding that the court need not reach the merits of plaintiff's action where plaintiffs did not exhaust their administrative remedies because "Section 2000a–3(c) requires that plaintiffs refer their complaint to a state agency for resolution before proceeding in federal court.").

Accordingly, Plaintiff's claim 2 should also be dismissed to the extent it purports to allege a violation of 42 U.S.C. § 2000a.

**F.    Without a Valid Federal Question, the Court May Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims.**

As discussed above, each of Plaintiff's Federal claims—ostensibly giving rise to federal question jurisdiction in this case—should be dismissed.  Plaintiff's remaining claims are all state law claims.  See Am. Compl., pp. 3–5 (Dkt. No. 11 at 3–5). Additionally, there is no basis for diversity jurisdiction, as Plaintiff and Defendants are all Oregon citizens.  Therefore, if the Federal claims are dismissed, then the Court's sole basis to exercise subject matter jurisdiction is supplemental jurisdiction.

"The exercise of supplemental jurisdiction over the remaining state-law claims is committed to the discretion of the district court." *Wilson v. Frates*, No. 3:16-CV-01690-BR, 2018 WL 700789, at *10 (D. Or. Feb. 2, 2018) (*citing Foster v. Wilson*, 504 F.3d 1046, 1051–52 (9th Cir. 2007) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion."); 28 U.S.C. § 1367(c)(3); *Fang v. United States*, 140 F.3d 1238, 1243–44 (9th Cir. 1998)). "The Ninth Circuit has held district courts generally should decline to exercise supplemental jurisdiction over state-law claims after the federal claims have been dismissed before trial." *Id.* (*citing Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally,

dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed."); *Souch v. Howard*, 27 Fed. Appx. 793, 795 (9th Cir. 2001) ("When all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state-law claims.")); *see also Jones v. Las Vegas Valley Water Dist.*, 552 F. App'x 623, 624 (9th Cir. 2013) ("The district court did not abuse its discretion by declining to exercise supplemental jurisdiction over Jones' state law claims because no federal claims remained.") (*citing Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (where all federal claims are eliminated before trial, courts generally should decline to exercise supplemental jurisdiction over remaining state law claims)); *O'Brien v. Maui Cnty.*, 37 F. App'x 269, 273 (9th Cir. 2002) ("Under 28 U.S.C. § 1367(c)(3), a district court may, in its discretion, decline to exercise supplemental jurisdiction over related state law claims once it has 'dismissed all claims over which it has original jurisdiction[.]'").

Accordingly, Defendants request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.

### G.    Dismissal Without Leave to Amend Is Appropriate.

Given the extensive deficiencies in the Amended Complaint, the Court has discretion to dismiss Plaintiff's claims with prejudice, rather than granting him another opportunity to amend. *See, e.g., McZeal v. JP Morgan Chase Bank, N.A.,* 735 F. App'x 913, 917 (9th Cir. 2018) ("Given the extensive deficiencies in the complaint, the district court did not abuse its discretion in dismissing McZeal's federal claims with prejudice, rather than granting leave to amend.") (*citing Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1125 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1067 (9th Cir. 2020) (holding that district court did not abuse its discretion in dismissing a suit with prejudice when amending the complaint would have been futile)); *see also Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-02778-TSH, 2019 WL 3503109, at *2 (N.D. Cal. Aug. 1, 2019)

Page 13 -  DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

(*citing Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)) ("[T]he Court may deny leave to amend for a number of reasons, including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'").

Accordingly, Defendants request that the Court dismiss Plaintiff's Amended Complaint with prejudice.

**H.    To the extent that the Court Exercises Its Discretion to Retain Jurisdiction over the State Law Claims, Such Claims Should be Dismissed as a Matter of Law.**

If the Court exercises its discretion to retain jurisdiction over Plaintiff's state law claims, the Court should dismiss those claims for failure to state a claim, as discussed briefly, in turn, below.

**1.    Claim 3 Based on ORS 659A.343 Should be Dismissed.**

In his third claim for relief, Plaintiff has alleged that Defendants violated an Oregon state law prohibiting discrimination against non-Real ID holders. Am. Compl., p. 3–4 (Dkt. No. 11 at 3–4). Under that relatively new statute, "[a] person may not discriminate against an individual because the individual holds or presents a form of government issued identification other than a Real ID." ORS 659A.343(2). A "Real ID" is "a driver license, driver permit or identification card that complies with the Real ID Act of 2005, P.L. 109-13, that is issued by [the State of Oregon] and marked with a distinguishing feature." ORS 807.450.

By way of background, Oregon introduced a two-tier driver's license system in response to the federal government's Real ID program. *See, e.g.*, *Oregon House Oks Bill Giving Driver's Licenses to Undocumented Individuals*, https://www.opb.org/news/article/undocumented-driver-license-oregon-house/. The Real ID, a more stringent form of identification, is required for airline travel or to enter federal government

Page 14 - DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

buildings. *Id.* However, obtaining a Real ID-compliant license requires showing proof of citizenship, which can be hard for undocumented Oregonians and others who may have lost their birth certificate. *Id.*

As a consequence, the Oregon legislature passed House Bill 2015 to eliminate the requirement that driver license applicants must provide proof of legal presence before receiving a standard noncommercial driver license, driver permit or identification card. See https://www.oregon.gov/odot/DMV/Pages/HB2015.aspx. "The bill includes anti-discrimination language for those with standard licenses or ID cards that are not Real ID compliant and explicitly states that they are not evidence of the holder's citizenship or immigration status." Oregon Legislative News Release, 6/30/2019 (see https://content.govdelivery.com/accounts/ORLEG/bulletins/24f4bf2).

Plaintiff has not stated a claim based on this statute. Nowhere in the Amended Complaint does he allege that Defendants required him to have a Real ID or even mentioned a Real ID. To the contrary, Plaintiff alleges that Defendants told him he could verify his current address with a utility bill or lease. See Am. Compl., p. 1 (Dkt. No. 11 at 1).

### 2.    Each of Plaintiff's Claims Under Oregon's Unlawful Business and Trade Practices Act Should be Dismissed (Claims 4, 5, and 6).

Each of Plaintiff's claims under the Unlawful Business and Trade Practices Act should be dismissed for failure to state a claim. First, Plaintiff has alleged a claim for violation of ORS 646.607(1), which provides that a person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person employs any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation.

"[T]o establish a violation of ORS 646.607(1), the following requirements must be met: (1) a person, (2) in the course of the person's business, vocation, or occupation, (3) employs any unconscionable tactic, (4) in connection with selling, renting, or disposing of real

Page 15 -   DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

estate, goods, or services, or collecting or enforcing an obligation." *Daniel N. Gordon, PC v. Rosenblum*, 276 Or. App. 797, 806, 370 P.3d 850, 855 (2016), *aff'd sub nom. Gordon v. Rosenblum*, 361 Or. 352, 393 P.3d 1122 (2017).

"The UTPA defines 'real estate, goods or services' as 'those that are or may be obtained *primarily* for personal, family or household purpose ... and includes loans and extensions of credit....'" *Stoss v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-01068-AC, 2014 WL 585946, at *9 (D. Or. Feb. 14, 2014) (*quoting* ORS § 646.605(6)(a) (emphasis in original)).

However, nothing in the statute suggests that it applies to opening a checking account. As discussed above with respect to Plaintiff's ECOA claim, a checking account is not a loan or extension of credit. Additionally, there is no allegation that Defendants were selling, renting or disposing of anything.

Further, Plaintiff's Fifth Claim for Relief, for alleged violation of ORS 646.608(k), also fails to state a claim. Under that section, the UTPA makes it an unlawful business practice to make "false or misleading representations concerning credit availability or the nature of the transaction or obligation being incurred." However, again, a checking account is not a loan or extension of credit.

Moreover, Plaintiff's Sixth Claim for Relief, under ORS 646.608(u), also fails to state a claim. That section make it an unlawful business practice to "[e]ngage[] in any other unfair or deceptive conduct in trade or commerce." However, "[i]n order to bring a claim under § 646.608(l)(u), the Oregon Attorney General must have established a rule declaring the conduct to be unfair or deceptive." *Stoss v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-01068-AC, 2014 WL 585946, at *8 (D. Or. Feb. 14, 2014) (*citing* ORS § 646.608(4)). In this instance, there is no such rule and Plaintiff cites none.

### 3.    Plaintiff's Claim 7 Under ORS 401.965 Should Be Dismissed.

Plaintiff's Seventh Claim for relief should be dismissed. Plaintiff brings this claim under Oregon's price gouging statute, ORS 401.965. That statute provides, in pertinent part, that

"[a] merchant or wholesaler may not sell or offer to sell essential consumer goods or services for an amount that represents an unconscionably excessive price during a declaration of an abnormal disruption of the market under subsections (5) to (7) of this section." ORS 401.965.

However, the Credit Union is neither a merchant nor a wholesaler, and is not alleged to have sold or offered to sell anything to Plaintiff.

### 4.   Plaintiff's Claim 8 for Trade Discrimination Should Be Dismissed.

Plaintiff's Eighth Claim for relief, under ORS 30.860, should also be dismissed. Under that statute, "[a] person or governmental entity may not discriminate against, boycott, blacklist or refuse to buy from, sell to or trade with any person *because of foreign government imposed or sanctioned discrimination* based upon the race, religion, sex, sexual orientation, gender identity or national origin of the person or of the person's partners, members, directors, stockholders, agents, employees, business associates, suppliers or customers." ORS 30.860 (emphasis added). There is no allegation that Defendants discriminated against Plaintiff because of foreign government imposed or sanctioned discrimination.

### 5.   Plaintiff's Claim for Relief Under ORS 646.080 Should Be Dismissed.

Plaintiff's claim under ORS 646.080 (mis-numbered as Claim 10) should be dismissed. Under that statute, "[n]o person engaged in commerce or food commerce, or both, in the course of such commerce, shall discriminate *in favor of one purchaser against another purchaser* or purchasers of a commodity, or service, or output of a service trade, bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of any services or facilities connected with the processing, handling, sale or offering for sale of such commodity, or service, or output of a service trade, purchased upon terms not accorded to all purchasers on proportionally equal terms." ORS 646.080 (emphasis added).

However, Plaintiff was not a purchaser, and Defendants are not alleged to have favored one purchaser over another purchaser.

Page 17 -   DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

6.    **Plaintiff's Claim for Intentional or Negligent Interference with Business Relations Should Be Dismissed.**

Finally, Plaintiff's last claim (mis-numbered as Claim 11), based on the common law tort of interference with business relations, should be dismissed.

"A claim of interference with economic relations requires Plaintiff to prove six elements: (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *Kali v. Cent. Intel. Servs.*, No. 6:20-CV-01204-MK, 2020 WL 8674170, at *4 (D. Or. Sept. 10, 2020) (*citing Cron v. Zimmer*, 255 Or. App. 114, 125, 296 P.3d 567, 575 (2013)).

Plaintiff asserts that Defendants interfered with a business relationship between Plaintiff and Unitus. See Dkt. No. 11 at 5. However, Defendants are not a "third party"—Unitus cannot interfere with a business relationship with itself. Moreover, Plaintiff has not plausibly alleged a business relationship with "the court appointed settlement administrator" or "the company Coinbase." *See id.*

Furthermore, as discussed above with respect to Claim 1, the courts have found that the Bank Secrecy Act (regarding customer identification program requirements for financial institutions) does not give rise to a common law duty on the part of financial institutions. *See Kraft v. Off. of the Comptroller of Currency*, No. 4:20-CV-04111-RAL, 2021 WL 1251393, at *3–4 (D.S.D. Apr. 5, 2021) (collecting cases). Plaintiff's Eleventh Claim for relief should be dismissed for this reason as well.

/ / /

/ / /

/ / /

/ / /

## IV.    Conclusion.

Plaintiff's Amended Complaint fails to state a claim against Defendants upon which relief may be granted. For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed, without leave to amend.

DATED this 12th day of October, 2022.

FARLEIGH WADA WITT

By: _____
Trish A. Walsh, OSB #101604
twalsh@fwwlaw.com
(503) 228-6044

Attorneys for Defendants Unitus
Community Credit Union and Rebecca
Rich

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 5,810 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 12th day of October, 2022.

FARLEIGH WADA WITT

By: _____
Trish A. Walsh, OSB #101604
twalsh@fwwlaw.com
(503) 228-6044

Attorneys for Defendants Unitus
Community Credit Union and Rebecca
Rich

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  None; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> Benjamin Jay Barber
> 10043 SE 32nd Avenue
> Milwaukie, OR  97222
>
> Plaintiff *pro se*

FARLEIGH WADA WITT


By:  ___Til a. Wall_____
Trish A. Walsh, OSB #101604
Attorneys for Defendants
121 SW Morrison St., Suite 600
Portland, Oregon 97204
(503) 228-6044
twalsh@fwwlaw.com

Page  1 – CERTIFICATE OF SERVICE