In the US District Court for the State of Oregon

Benjamin Jay Barber,
Benjamin Jay Barber Ex. Rel. United States.
V.
Unitus Community Credit Union,
Rebecca Rich, in her official capacity
as branch manager for Unitus
Unknown John Doe, in his official capacity as
bank teller for Unitus,
U.S. Department of the Treasury,
Office of Comptroller of Currency,
National
Inclusiv,
Credit Union Diversity, Equity, and Inclusion
Collective,
Brown Hope,
Urban League of Portland

Case No. 3:22-cv-00134-MO

Proposed Amended Verified Complaint
(Class Action Status Requested)
(Jury Trial Requested)

## Introduction

On December 21 2021 between the hours of 3:00 pm and 5:00 pm Benjamin Barber did visit the Westmoreland branch of Unitus Community Credit Union to open a checking account, with the purposes of depositing a class action settlement check issued pursuant to the settlement agreement in Great Northern Resources et al v. Katy Coba, et al case no 3:20-cv-0186-IM USDC D.Or

Upon the request to open an account, the plaintiff was told by the teller that he required 2 pieces of identification, that he could use government issued identification, and for the secondary identification he could use a bank card from a financial institution. The defendant was also told that he was required to have proof of address, in the form of a lease, or utility payment.

The plaintiff provided to the teller his (1) Oregon ID card (2) social security card (3) his Washington County Jail picture identification card (4) his Coinbase Visa card (5) his Paypal Cash card, whereupon the teller told the plaintiff that his identification was too new for proof of residence, and the plaintiff offered to locate his Century Link internet bill for proof of address. The teller also stated that his coinbase and paypal cash cards are not sufficient as identification.

Plaintiff informed the teller that he in fact used to be a customer of Unitus Community Credit Union, and that they could identify his identity with that information. Moreover, the check

itself also bears his address, as further proof of residence, and that it was issued as a part of the Oregon "Black Only" COVID relief program lawsuit, to which he filed motions bearing his address and are public record.

Whereupon the plaintiff demanded to see a copy of the rules and regulations that the organization uses to verify identity, known hereafter as their "know your customer" (kyc) rules, a common regulatory phrase to embody the regulations in 31 CFR 1020.220. The teller stated that he didn't have any way for the plaintiff to see the Unitus rules regarding opening accounts, and summoned a manager defendant Rebecca Rich.

Defendant Rich averred to the plaintiff that his coinbase and paypal cash cards are not appropriate as identification, because they do not have "know your customer" rules to which the Plaintiff responded that Coinbase does in fact have to verify those rules, as required by the securities and exchange commission to exchange cryptocurrencies to US dollars, and in fact has an office in Portland, Oregon,

Defendant Rich averred to the plaintiff that he in fact needed "3 forms of id" (exact citation), and including his State photo identification, because his state photo id was issued too recently. Defendant confirmed that they do not accept coinbase or paypal as financial institutions, even though she confirmed they are not "prepaid" cards and bear plaintiff's name, and that they do not recognize the Washington County Jail Inmate Card.

Defendant Rich averred to the plaintiff that they would not be able to use his previous account to verify his identity, because the account has been closed more than 3 years old.

Plaintiff requested the defendants confirm to him that with all of the objects that he listed herein, he would be unable to open an account with Unitus, which they did confirm to the plaintiff.

Defendant Rich averred to the plaintiff that the company Unitus does not provide to the public, the rules and regulations regarding opening accounts with their organization, upon which the plaintiff stated that it was upon his information and belief, that such disclosures were in fact required and that the organization is likely violating Oregon's "Deceptive Trade Practices" laws for its failure to disclose that information.

Plaintiff averred that he would return the next day, to provide the rules and regulations, and that if there was no compliance with those regulations, that he would then see them in Multnomah County Circuit Court. After returning to his home he applied through the Unitus Website for a checking account, and was told that it would be processed in one day, and he would receive further information. Plaintiff visited the Unitus website, and nowhere did the any of these rules stated by the defendant appear, but rather the following text appears at https://www.unitusccu.com/business-checking/ archived at https://archive.md/1eYZh :

"For each account owner and signer:
1. Primary form of ID, usually a valid driver's license with a current address. If address is not current, bring a document such as a utility bill showing your current address.
2. Secondary form of ID, usually a debit or credit card from another financial institution"

On Jan 25, 2022 and Mar 9, 2022 the plaintiff went to the Downtown Unitus location, in an attempt to ask that branch to open him an account, using the same forms of identification that was previously provided. Plaintiff was informed on Jan. 25th that there was some sort of interoffice message, which had made them aware of who I was, and that they would not open an account for the plaintiff, presumably at the request of defendant Rich.

## Jurisdiction

This court has jurisdiction on the basis of federal question pursuant to 28 USC 1331

## Venue

The Venue is appropriate because the actions that gave rise to the suit occurred in the state of Oregon, and the defendants intended for their effects to be felt in the state of Oregon.

## The Parties

Unitus Community Credit Union, is a state chartered credit union domiciled in the state of Oregon

Rebecca Rich, is an employee of Unitus Community Credit Union, and she is sued in her official capacity as branch manager for Unitus

John Does, are the other Unitus Community Credit Union employees in their official

capacity as bank teller for Unitus, which the plaintiff sought to open an account with.

U.S. Department of the Treasury, is the agency which provided funds to Unitus, and promulgated race based policies in awarding funds to credit unions.

Office of Comptroller of Currency, is the agency which is responsible for the oversight of the credit unions in part, which failed to properly oversee the policies of Unitus.

National Credit Union Administration, is the agency which is responsible for the oversight of credit unions in part, which failed to properly oversee the policies of Unitus, and who promulgated race based policies, in awarding funds and rating performance of credit unions.

Inclusiv, is a company domiciled in the state of New York, which conspired with Unitus, and CU-DEI, and operates as a certified CDFI intermediary, to discriminate on the basis of race.

Credit Union Diversity, Equity and Inclusion Collective (CU DEI Collective), plaintiff believes is an unincorporated association, led by Victor Corro with members who work at credit unions all over the country, which conspired with Inclusiv and Unitus, to discriminate on the basis of race.

Urban League of Portland is a company domiciled in the state of Oregon, which conspired with Unitus and 5 other credit unions, to discriminate on the basis of race in its financial empowerment collaborative, to assist only black people in receiving credit union services.

Brown Hope is a company domiciled in the State of Oregon, which conspired with Unitus, to discriminate against the plaintiff on the basis of race, in its "black resilience fund", the funds from which came in part or whole from Unitus.

## Claims

**Claim 1:** 12 CFR Part 55 Fair Access to Financial Services [Docket ID OCC-2020-0042] . 31 CFR § 1020.220(A)(5) - Customer identification program requirements for banks.

Plaintiff avers that the policy that the defendant told the plaintiff, was not published for notice to the public, before the plaintiff traveled to the bank to open the account, in violation of the federal regulation obligating the defendant to do so. Moreover that the bank failed its obligation to:

"address situations where an individual is unable to present an unexpired government-issued identification document that bears a photograph or similar safeguard; the bank is not familiar with the documents presented; the account is opened without obtaining documents; the customer opens the account without appearing in person at the bank; and where the bank is otherwise presented with circumstances that increase the risk that the bank will be unable to verify the true identity of a customer through documents."

...

"through the comparison of information provided by the customer with information obtained from a consumer reporting agency, public database, or other source; checking references with other financial institutions; and obtaining a financial statement."

Moreover that the bank is required by the OCC pursuant to 12 USC 1(a), to provide fair access to financial services, which the organization failed to do, as stated in the official rule making it must:

(1) Make each financial service it offers available to all persons in the geographic market served by the covered bank on proportionally equal terms;

(2) Not deny any person a financial service the covered bank offers unless the denial is justified by such person's quantified and documented failure to meet quantitative, impartial risk-based standards established in advance by the covered bank; and

(3) Not deny, in coordination with others, any person a financial service the covered bank offers

There is no right of private enforcement provided for enforcement of this provision, though the violation thereof is offered as proof of claims below, specifically that the bank is in violation of state torts regulating unlawful trade practices.

**Claim 2:** Discrimination pursuant to the Equal Credit Opportunity Act 15 U.S.C. § 1691e(b), 12 C.F.R. § 1002.16, 42, U.S.C. § 2000a, 42 U.S. Code § 1981, ORS 659A.403, 14th Amendment

Plaintiff avers that being unable to even open a bank account, due to the denial of services from the defendant Rebecca Rich, also precludes the plaintiff from also being able to request credit services from defendant's business Unitus. Plaintiff avers that the denial was not proximately related to any financial risk, because Mrs. Rich did not know the status of his finances. Instead the Plaintiff avers that Mrs. Rich used arbitrary rules which were not a part of their official business policy, to discriminate on the basis of the plaintiff's disability, race, or source of public assistance (the coronavirus check).

Evidence of Discrimination, is the way in which the plaintiff was treated compared to similarly situated individuals, and compared to how he was treated before when he was a customer. Moreover the demeanor in which he was treated, leads him to believe that there was some animus, because of her use of arbitrary, unlawful, and undocumented rules. Plaintiff

suspects the bank engages in "lemon dropping", to disfavor white customers who aren't profitable for them to do business, and increase the percentage of black customers.

Previously when the plaintiff had an account with Unitus Community Credit Union, he made an application for the "bicycle loan program", and was not discriminated against on the basis of protected characteristics. Currently, the plaintiff is designing machine learning software systems, for which he may conceivably need access to credit, if the number of concurrent users to his software platform requires significant cloud computing expenditures. However the plaintiff is foreclosed from this possibility, because Unitus continues to disallow him to apply for an account, using nebulous reasoning regarding his inability to verify his identity.

Unitus has also stated that it's "providing ongoing support to organizations that fight injustice and bring about meaningful advancements for our Black and Brown communities."[1] and signed a commitment[2] to "Create a more just and equitable financial system by examining products and policies that appear "race neutral" with a racial equity lens to extend the benefits to communities of color." with the "Credit Union Diversity, Equity and Inclusion (CU-DEI) Collective"[3]

Unitus's own marketing materials refer to "diversity equity and inclusion", equity refers to equality of outcome, rather than equality of opportunity. Rather than trying to help individuals with equity with other individuals, the defendants propose equity among racial groups, which requires disparate treatment based upon membership of those races.

To achieve this Unitus joined with 5 other credit unions and the Urban League of Portland, to create the "Financial Empowerment Collaborative" which offers services to black individuals. They did so on the misbegotten theory, that Black oregonians have "unique needs", which is a discriminatory classification on the bais of race. When in fact the plaintiff has the same needs that black individuals have, when trying to sign up for services with Unitus, and was not provided "case management" and "[easy] access [to] credit union products and services."

> "The FEC's approach will focus on addressing Black Oregonians' unique needs, so they can gain access to supportive products, services, education, and financial tools. The program will include customized financial education and coaching, case management, and an environment where

---

[1] https://www.unitusccu.com/blog/a-message-from-unitus-community-credit-union/
[2] https://twitter.com/UnitusCCU/status/1275570972855156736
[3] https://www.cudeicollective.org/wp-content/uploads/2021/04/PSCU2-0097_-_CU_DEI_Collective_Website_REV3-2.pdf

participants can easily access needed credit union products and services."[4]

"Unitus Community Credit Union is pleased to partner with FTSI in the development of a new mobile app to better serve the Black community's financial needs."[5]

"This position will help Black Oregonians connect with financial education, products, and services that meet them where they're at in their financial wellness journey," Aimee Berg said[6]

Moreover the defendant engages in the same activities that led to the lawsuit between the plaintiff and the State of Oregon, with regards to "black only" welfare programs. They created an app, for only black Oregonians using money that came from the US government, "to provide financial products, services, and educational materials to Black Oregonians". The defendant Unitus also provided money to a group to "Brown Hope" for their "black resilience fund", whose singular purpose is to give free money only to black people. The plaintiff applied to receive the welfare from the "black resilience fund", but was denied on the basis of race.

Plaintiff alleges that the defendant may have not wanted the plaintiff to be a member of the credit union, which would entitle him to a share of the organization, and would allow him to challenge the business practices based on equity, using his power as a shareholder to do so. Plaintiff also believes that the defendant may have not wanted the plaintiff to apply for credit services which are being provided to members based upon their membership of certain races.

Plaintiff also alleges that had he been black that he would have been offered the "customized financial education and coaching, case management, and an environment where participants can easily access needed credit union products and services" By Unitus or its contractor the Urban League of Portland, which is being offered to black oregonians by the defendant, but not to white oregonians.

Plaintiff alleges that he was discriminated against in the provision of funds advertised to the public by the organization Brown Hope, for its "black resilience fund"[7], based upon his race. That Unitus conspired with Brown Hope, and encouraged and ratified its discrimination, by

---

[4] https://nwcua.org/2021/11/09/urban-league-partners-with-five-portland-cus-to-advance-financial-well-being-of-black-oregonians/
[5] https://www.unitusccu.com/assets/uploads/Unitus-CCU-and-FTSI-Collaborate-on-App-for-Black-Oregonians.pdf
[6] https://www.badcredit.org/news/unitus-community-credit-union-meets-local-member-needs/
[7] https://www.brownhope.org/black-resilience-fund

providing it money for that purpose, so that Unitus was able to receive financial benefits from the U.S. Department of Treasury.

Plaintiff is also disfigured, and also disabled, and this disfigurement is a source of discrimination among many people in the community, and that may have been a motivation of defendant Rich.

**Claim 3:** 31 U.S. Code § 3730 - Civil actions for false claims, 18 U.S.C. § 1346 Honest Services fraud by and through the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(b), 12 C.F.R. § 1002.16, 42, U.S.C. § 2000a, 42 U.S. Code § 1981, ORS 659A.403, 14th Amendment, Civil RICO, 18 U.S.C. § 1964,

Plaintiff avers that the defendant Unitus unlawfully defrauded the National Credit Union Administration, seeking a grant of $50000 from their Community Development Revolving Loan Fund, which specifically had rules preventing the funds for being used discriminatorily stating:

> "The Applicant conducts its activities such that no person is excluded from participation in, is denied the benefits of, or is subject to discrimination on the basis of race, color, national origin, sex, age, or disability in the distribution of services and/or benefits provided under this grant program. The credit union agrees to provide evidence of its compliance as required by the NCUA. Furthermore, credit unions should ensure compliance with title VI of the Civil Rights Act of 1964."[8]

Despite this, Unitus used to the funds, to provide support to the Financial Empowerment Collaborative, on the theory that black people have unique needs, and provided the contract to a "minority owned" business on the basis that awarding the contract to a minority is a virtue, or alternatively that minorities have special abilities or qualifications.

Unitus did so so they could apply to become a community development financial institution, so that they would be eligible for funds from the U.S. Department of Treasury. To achieve this end they joined the company Inclusiv which is "a certified CDFI intermediary"[9]

> "As Unitus has grown the last year to offer more value to its members, the credit union has also applied to become a community development financial institution, also known as CDFI designation. CDFI designation will allow Unitus to receive government support and provide access to programs, products, and services to those in their communities that do not have access to traditional banking products and services.
>
> Becoming a CDFI designated credit union will also strengthen and expand Unitus' community

---

[8] https://www.federalregister.gov/documents/2022/04/01/2022-06953/community-development-revolving-loan-fund-access-for-credit-unions
[9] https://inclusiv.org/membership/membership-directory/

programs, such as their partnership with Urban League, enabling them to better connect with community partners and in turn, connect their community partners with more resources."[10]

Inclusiv also joined the CU-DEI organization,[11] and advertises that it discriminates on the basis of race in dispensing funds to organizations[12]

> "Inclusiv launched a $20 million Racial Equity Investment Fund deploying secondary capital investments to expand economic relief and financial inclusion for credit unions that serve communities of color." ... "Inclusiv seeks to support a cohort of credit unions that reflect the diversity of the credit union movement. We seek applications from credit unions and cooperatives serving rural and/or urban communities, and institutions serving Black American, Hispanic American, Asian American, and/or Native American communities."[13]
>
> "Work to create a more just and equitable financial system We commit to fight for a more equitable financial system by examining products and policies with a racial equity lens, identifying products that may appear "race neutral" but in practice place greater cost and burdens on those in our communities that have an unequal starting point. We will work to extend the benefits of cooperatively owned and controlled financial institutions to communities of color in general and to Black communities specifically."[14]

Presumably Unitus became aware when trying to apply to become a CDFI, that by discriminating on the basis of race, it would be eligible for new programs that are being offered by the treasury department, which are targeting individuals on the basis of race. As the CDFI Department of the Treasury and the Consolidated Appropriations Act shows:

> "**New Programs**
> The CDFI Fund has been working diligently to make available roughly $1.75 billion in funding to support lending in minority communities and minority lending institutions that, along with RRP, was <u>included</u> in the Consolidated Appropriations Act of 2021 (Pub. L. 116-260).[15] Much has already been done to prepare for this program's launch—we have crafted policies, procedures, and systems necessary to structure a funding blueprint. As a result, the CDFI Fund anticipates that the application round for the program will open in spring 2022."[16]

Pub L. 116-260 SEC. 523. EMERGENCY SUPPORT FOR CDFIS AND COMMUNITIES RESPONDING TO THE COVID–19 PANDEMIC.

> (2) up to $1,750,000,000, shall remain available until expended, to provide grants to CDFIs to respond to the economic impact of the COVID–19 pandemic—
>> (A) to expand lending, grant making, or investment activity in low- or moderate-income minority communities and to minorities that have significant unmet capital or financial services needs;
>> (B) using criteria such as certification status, financial and compliance performance, portfolio and balance sheet strength, a diversity of CDFI business model types, status as

---

[10] https://www.badcredit.org/news/unitus-community-credit-union-meets-local-member-needs/
[11] https://inclusiv.org/inclusiv-commitment-to-fight-for-racial-justice/
[12] https://inclusiv.org/17586-2/
[13] https://inclusiv.org/racial-equity-grant-fund/
[14] https://inclusiv.org/inclusiv-commitment-to-fight-for-racial-justice/
[15] https://www.congress.gov/116/plaws/publ260/PLAW-116publ260.pdf at pg 908
[16] https://www.cdfifund.gov/director-messages/35

> a minority lending institution, and program capacity, as well as experience making loans and investments to those areas and populations identified in this paragraph; and
> (C) of which up to $1,200,000,000, shall be for providing financial assistance, technical assistance, awards, training and outreach programs to recipients that are minority lending institutions.[17]

This is complicated by the fact that the Treasury Department's CDFI Fund requires that organizations not engage in discrimination, despite the fact that their own organization is discriminating, and soliciting others to discriminate:

> "Non-discrimination provisions apply to all programs and activities of the CDFI Fund and its recipients and sub-recipients of federal financial assistance. In CDFI Fund programs and activities, discrimination is prohibited on the basis of race, color, sex, national origin, age, disability, or limited English proficiency. Reprisal actions against individuals for their prior civil rights activity are also prohibited."[18]

Whereas in the certification application, it requires "To be a CDFI, an entity must maintain accountability to residents of its Investment Area or Targeted Population, through representation by individuals on its governing board and/or Advisory Board(s). Individual accountability to a Target Market may be demonstrated through any of the following means:" and where an "Other Targeted Population" is defined by:

> "- Other Targeted Populations currently recognized by the CDFI Fund are:
> - Other Targeted Population – African American
> - Other Targeted Population – Hispanic
> - Other Targeted Population – Native American (with maintained tribal affiliation or community connection) - Other Targeted Population – Native Alaskan residing in Alaska (with maintained tribal affiliation or community connection)
> - Other Targeted Population – Native Hawaiian residing in Hawaii
> - Other Targeted Population – Other Pacific Islander residing in Other Pacific Islands
> - Other Targeted Population – Persons with Disabilities"[19]

Therefore the plaintiff alleges that the defendants deprived the plaintiff of honest services, to wit: Unitus denied the plaintiff banking services on the basis of race, so that it could receive benefits from the federal government which were contingent on the basis of race, and thus deprived the plaintiff of honest services; Brown Hope denied the plaintiff its black resilience fund on the basis of race, so that it could receive benefits from Unitus Community Credit Union, which deprived the plaintiff of honest services. Unitus conspired with the company Inclusiv and the company CU-DEI, in order to achieve the goal of depriving the plaintiff of honest services.

---

[17] https://www.congress.gov/116/plaws/publ260/PLAW-116publ260.pdf at pg 908
[18] https://www.cdfifund.gov/about/non-discrimination
[19] https://www.cdfifund.gov/sites/cdfi/files/2022-10/CDFI_Certification_Application_Preview_Final_10322.pdf

Therefore the plaintiff alleges that defendants Unitus, Inclusiv, created an artifice to defraud the taxpayers of the United States, by provisioning financial services on the basis of race. They knew, reasonably should have known, or were willfully blind, to the fact that using equity and diversity policies violate the laws of the United States., in addition to other discrimination laws and regulations. The defendants then used the artifice of artful language such as "equity", 'diversity', and "inclusion" to defraud the United States, by using the funding for discriminatory programs. Lastly, they submitted these false claims for payment from the U.S. government, for the purposes of committing unlawful acts, and for that they should be forced to reimburse the US Treasury for its disbursement pursuant to the False Claims Act.

The plaintiffs allege that the conspiracy between the defendants, and that their actions in creating race based policies in financial services constitutes a pattern of racketeering activity, which deprived the plaintiff of money from the Oregon Cares fund lawsuit, and deprived him of his ability to fund his machine learning services, in violation of Civil RICO through the official misconduct, bank fraud, and honest services fraud predicate offenses.

**Claim 4:** ORS 659A.343 Discrimination based on individual's presentation of identification other than Real ID prohibited

Plaintiff avers that the defendant intentionally discriminated, based on the plaintiffs production of his state ID which is not a Real ID, and his Washington County Jail Inmate identification card.

**Claim 5**: ORS 646.607(1) Unlawful business trade practices

Plaintiff avers that the defendant employed unconscionable tactics, by relying on a set of secret and allegedly unpublished rules, which could alternatively be used to disguise or employ unlawful discrimination.

Plaintiff avers that the defendant employed unconscionable tactics, by fabricating a set of rules which are contradicted by the rules published on their website.

Moreover the defendant Unitus made representations that they were inclusive and provided open membership, which were inaccurate, as they only applied to members of minority groups, and did not apply to plaintiffs.

**Claim 6**: ORS 646.608(k) Makes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred.

Plaintiff avers that the defendant Unitus made false or misleading representations, about the eligibility of the plaintiff for credit through the bank, by misrepresenting that there were rules that actually did not exist, or were not advertised, or that were not legal. Moreover the defendant Unitus made representations that they were inclusive and provided open membership, which were inaccurate, as they only applied to members of minority groups, and did not apply to plaintiffs.

Had the plaintiff been eligible to have his identity verified by the defendant Unitus, he would have applied for financing for his machine learning software development projects, so that he would be able to scale up the deployment of those projects to the public, to cover short term financing until he could earn a return on his loan. Plaintiff had previously attempted to apply for a bicycle loan from Unitus, and because he was unable to be verified as a customer, he was also denied access to credit.

**Claim 7**: ORS 646.608(u) Engages in any other unfair or deceptive conduct in trade or commerce.

Plaintiff avers that the defendant was either unfair or deceptive, because the defendant implemented rules that were not published, thus violating federal regulations, and constituting an unfair business practice.

Plaintiff further avers the specific rule even implemented with proper notice, is unfair because it does not represent a legitimate business need, legally unnecessary, not the least restrictive means, and overly burdensome to the customers with disabilities, creating a disparate impact upon them.

**Claim 8**: ORS 401.965 Abnormal disruption of market

Plaintiff avers that banking is an essential good, that there is an abnormal disruption in the market due to COVID, and that the costs imposed by the defendant upon plaintiffs and other similarly situation to plaintiff, such as costs of compliance with unrealistic identity verification rules that applied only to the plaintiff, such as those that were provided by the Urban League of Portland, and are excessive and prohibit the payment of COVID relief funds to persons financially affected by COVID, and that the Governor has declared a state of emergency and disruption of markets due to COVID which are mandated by the state.

Moreover the plaintiff avers that the banking services that were being offered to people during the Covid-19 outbreak, were higher for members of the plaintiff's class than were for minority groups, such as capital requirements on loans, loan discharges, or grants as were provided by appropriations in Pub L. 116-260 SEC. 523

**Claim 9**: ORS 30.860 Action for trade discrimination

Plaintiff avers that the Defendant discriminated against the plaintiff, because the plaintiff disclosed to the defendant that he participated in civil rights litigation, regarding the "black only" covid relief fund, by informing the plaintiff that he would require 3 forms of identification. Therefore the plaintiff is entitled to threefold the damages sustained.

Plaintiff avers that the defendant unitus was aware that the check were the proceeds of a lawsuit regarding the "black only" coronavirus fund, and upon information and belief that the proceeds from such lawsuit disgusted the defendant

Plaintiff avers that the defendants took part in a scheme to discriminate against members on the basis of race, in the provision of financial services, and did so under the color of law.

**Claim 10**: ORS 646.080 Special services to customers

The plaintiff avers that the defendant treated him to extraneous regulation, that is not applied to any other person, and therefore singled him out for special treatment in violation of the statute, based on information and belief that both him and his ex wife had previously been customers of Unitus, and that the typical person is not required to present 3 different forms of identification.

The Defendants also provided special services to only black people, in the form of

**Claim 11**: Intentional or negligent Interference with Business Relations (common law tort)

Plaintiff avers that the defendant either intentionally or negligently interfered with the Business relationship between the plaintiff and Unitus, and with the court appointed settlement administrator, and with the company Coinbase, and with the company Paypal, either for improper purposes and motives or for a lack of using due care. The plaintiff would like to use a bank account to accept payments as a merchant for his software engineering projects, but is not able to do so because he does not have a bank account.

**Claim 12**: Promissory Estoppel / false advertising

Plaintiff avers that the defendant Unitus either failed to live up to its promises, with regards to failure to comply with their own Diversity Equity and Inclusion policies[20], and did not actually practice the promises of "inclusion" nor "open membership", and that these were materially false advertisements. That instead the inclusion that the company advertises, is only limited to individuals who are not white.[21]

> "Unitus Community Credit Union firmly believes the cooperative movement will benefit from adding an additional principle that centers diversity, equity, and inclusion among the core values of co-ops. Unitus encourages other credit unions to join its advocacy efforts, compelling the ICA to develop and adopt an eighth cooperative principle."[22]

## Prayer for Relief

Plaintiff seeks declaratory judgment that the defendant could have in fact followed the "know their customer" rules, given the documentary evidence both provided by the defendant, and by the methods used in the federal regulations 31 CFR § 1020.220(a)(2)(ii)(B)

> "through the comparison of information provided by the customer with information obtained from a consumer reporting agency, public database, or other source; checking references with other financial institutions; and obtaining a financial statement."

Plaintiff seeks declaratory judgment that the defendant failed its obligation to:

---

[20] https://www.unitusccu.com/join-unitus/
[21] https://inclusiv.org/committing-to-inclusion-through-multicultural-marketing/
[22] https://www.unitusccu.com/assets/uploads/8th-Cooperative-Principle-News-Release.pdf

"address situations where an individual is unable to present an unexpired government-issued identification document that bears a photograph or similar safeguard; the bank is not familiar with the documents presented; the account is opened without obtaining documents; the customer opens the account without appearing in person at the bank; and where the bank is otherwise presented with circumstances that increase the risk that the bank will be unable to verify the true identity of a customer through documents."

Plaintiff seeks declaratory judgment that the defendant failed its obligations to:
"describes the identification requirements of this section and provides the notice in a manner reasonably designed to ensure that a customer is able to view the notice, or is otherwise given notice, before opening an account"

Plaintiff seeks declaratory judgment that defendant Rich intentionally or with reckless disregard for the truth, misrepresented the duration that bank records are retained for.

Plaintiff seeks declaratory judgment that defendant Rich intentionally or with reckless disregard for the truth, misrepresented her ability to verify the plaintiffs identity, using the coinbase and paypal cash accounts.

Plaintiff seeks declaratory judgment that defendant Rich intentionally or with reckless disregard for the truth, misrepresented her ability to verify the identity of the plaintiff, using state issued photo ID's that were recently issued to him.

Plaintiff seeks declaratory judgment that defendant Rich intentionally or with reckless disregard for the truth, misrepresented her ability to verify the identity of the plaintiff, using the Washington County Jail ID that was issued to him.

Plaintiff seeks declaratory judgment that defendant Rich intentionally or with reckless disregard for the truth, misrepresented that the defendant would require 3 forms of ID including the state IDs to identify himself to the company.

Plaintiff seeks declaratory judgment that defendant Rich intentionally or with willful blindness, failed to disclose to the plaintiff, that there were other available methods that they could verify his identity to the company.

Plaintiff seeks declaratory judgment, that the plaintiff was treated specially or differently than other customers who are similarly situated to the plaintiff, by the defendant Unitus. Plaintiff

alleges that the defendants attempted to discriminate against individuals on the basis of race, including people seeking loans for their business or trades, in order to create 'equity' on the basis of race between the races in aggregate.

Plaintiff seeks declaratory judgment that Unitus had promised that they were "inclusive", and offered "open membership" in their advertisements, which were materially false because they were only inclusive of some races and not others.

Plaintiff seeks declaratory judgment, that the reliance on unpublished rules, or rather the different treatment of customers similarly situated, constitutes an unfair business practice.

Plaintiff seeks declaratory judgment that Brown Hope discriminated against the plaintiff on the basis of his race in their "Black resilience fund", which was advertised to the public, and deprived the plaintiff of honest services, and that some of they money either came from Unitus or was fungible and commingled with other funds.

Plaintiff seeks declaratory judgment that the Office of the Comptroller of Currency, the National Credit Union Agency, and the Department of Treasury, failed to adequately supervise and train Unitus, or either assisted, conspired, or consented to the discriminatory policies by Unitus.

Plaintiff seeks declaratory judgment that Pub L. 116-260 Sec. 523. Is deemed unconstitutional, either on its face or as applied to the Plaintiff, that the statute is void ab initio because congress lacked the appropriate money for race based programs, and intended to deprive the people of the United States of honest services.

Plaintiff seeks declaratory judgment that defendants Unitus, Inclusiv, defrauded the United States, because they knew, reasonably should have known, that their equity and diversity policies were in violation of the laws of the United States, and used the artifice of artful language such as "equity", 'diversity', and "inclusion" to defraud the United States, and deprive the plaintiff of honest services.

Plaintiff requests that the defendants immediately repay all money that were received from the United States, as a part of an unlawful discriminatory scheme, pursuant to the false

claims act, and that the plaintiff be entitled to recover a portion of those funds as the whistleblower.

Plaintiff requests injunctive relief pursuant to civil rico, to disgorge the defendants of any ill gotten gains that they had received as a result of their fraudulent and discriminatory activities, and restrain individuals within the U.S. Government who are operating or conspiring to operate discriminatory and unlawful practices in financial services.

Plaintiff seeks declaratory judgment regarding application of these and other facts uncovered through discovery and trial as decided by the jury, in application to the laws cited in the claims.

Plaintiff requests damages for the expiration of the $1000 check, which occurred on May 28th 2022.

Plaintiff requests trebled (tripled) the damages where available in statute.

Plaintiff requests unspecified punitive damages for the plaintiffs time and expense prosecuting the suit, and redressing the injury done by the defendants actions or omissions, including punitive damages to the emotional distress from being unlawfully discriminated against.

Plaintiff requests prejudgement interest and whatever other remedies the court deems the plaintiff is entitled to and is just.

Date  Nov 8, 2022                                                                 /s/Benjamin Barber